1

**E-Filed 7/6/10**

2

3

4

5

6

7

8

9    IN THE UNITED STATES DISTRICT COURT

10   FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   SAN JOSE DIVISION

12

| | |
|---|---|
| MARJORIE BROOKS, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMUNITY LENDING., INC; RBS FINANCIAL PRODUCTS, INC., f/k/a GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.; RBS ACCEPTANCE CORP., f/k/a GREENWICH CAPITAL ACCEPTANCE, INC.; GMAC MORTGAGE, LLC; and WELLS FARGO BANK, N.A., as Trustee of the Harborview Mortgage Loan Trust 2006-2010,<br><br>Defendants. | Case Number C 07-4501 JF (PVT)<br><br>**ORDER[1] GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>[re: docket nos. 131-32] |

24        In this putative consumer class action, Plaintiff Marjorie Brooks alleges state-law claims

25   for fraudulent omission and unfair business practices.  She alleges that Defendants ComUnity

26   Lending, Inc. ("ComUnity"); RBS Financial Products, Inc. ("RBS Financial") (formerly known

27   ─────────────────

28        [1] This disposition is not designated for publication in the official reports.

1  as Greenwich Capital Financial Products, Inc.),  RBS Acceptance Corp. ("RBS Acceptance")

2  (formerly known as Greenwich Capital Acceptance, Inc.); GMAC Mortgage, LLC ("GMAC");

3  and Wells Fargo Bank ("Wells Fargo") (collectively, "Defendants")[2] failed to disclose important

4  information about her residential mortgage in the clear and conspicuous manner required by law.

5  Defendant ComUnity originated Plaintiff's loan in 2006.  The loan subsequently was sold to RBS

6  Financial, securitized by RBS Acceptance, transferred to Wells Fargo in trust, and serviced by

7  GMAC.[3]

8      On October 30, 2009, Plaintiff filed the operative Sixth Amended Complaint ("SAC").

9  Defendants RBS Financial, RBS Acceptance (collectively, the "RBS entities"), and Wells Fargo

10 now move to dismiss the SAC for failure to state a claim upon which relief may be granted.  The

11 issues presented by the two state-law claims in the SAC have not been addressed in any previous

12 motions to dismiss.

13                              **I. BACKGROUND**

14     In May 2006, Plaintiff obtained an Option Adjustable Rate Mortgage ("Option ARM")

15 from ComUnity.  The terms of the mortgage are contained in the Adjustable Rate Note ("Note")

16 executed by Plaintiff in connection with the loan.  A central feature of the loan is its early interest

17 rate adjustment.  While the interest rate on the loan is pegged to a variable index and changes

18 over time, the loan offered a low initial interest rate of 1%, which resulted in an initial minimum

19 monthly payment of $1,193.78.  After one month, the interest rate increased from the low initial

20 rate of 1% to the substantially higher index-based rate, which was and continues to be calculated

21 by adding a 3.5% margin to an indexed figure.

22

23      [2] ComUnity filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court

24 for the Northern District of California on January 4, 2008, requiring a stay of Plaintiff's action
   against ComUnity.

25

26      [3] On July 16, 2009, pursuant to stipulation of the parties, the Court dismissed with
   prejudice all claims against Defendant GMAC and without prejudice Plaintiff's state-law claims

27 against the remaining defendants for breach of contract and tortious breach of the covenant of
   good faith and fair dealing.  (*See* Order Dismissing Def. GMAC Mortgage, LLC and Counts Four

28 and Five of Pl.'s Fifth Am. Class Action Compl.)

Despite the almost immediate rise in the applicable interest rate, Plaintiff's minimum monthly payment remained level because the Note permits only one annual increase to the minimum monthly payment. In addition, the Note provides for the exercise of a "payment cap" on the amount of each such annual increase to the minimum monthly payment, limiting that increase to 7.5%. Because the initial monthly payment was based on a 1% interest rate and did not rise with the actual interest rate that was charged, Plaintiff's mortgage began to accrue interest each month in an amount greater than the amount of her monthly payment. The remaining interest was added to the balance of unpaid principal and itself began accumulating interest. Consequently, the principal balance has increased even as Plaintiff has made the minimum monthly payment. This situation is known as negative amortization, the result of which is a reduction in the borrower's equity. If the loan's unpaid principal balance reaches 115% of its original value, the payment cap no longer applies and the remaining principal is paid off in equal monthly payments over the remaining term of the loan.

In connection with the loan transaction, Plaintiff executed the Note and received a federally mandated Truth in Lending Disclosure Statement ("Statement").[4] The Statement specifies that the annual percentage rate ("APR") on the mortgage is 8.406%. The Statement also includes a schedule of estimated payments ("Payment Schedule") based in part on the initial 1% interest rate and in part on the subsequent index-based rate. The Payment Schedule assumes that Plaintiff will make only the minimum monthly payment. It lists an initial minimum payment of $1,193.78 that increases by 7.5% on July 1 of each year. In the fifth year, the payment increases to $3,009.16, which apparently reflects the point at which the principal balance exceeds 115% of its original value as a result of negative amortization, thus overriding the payment cap.

---

[4] Plaintiff has attached the Note and the Statement to her complaint as Exhibits 1 and 2, respectively. The Court properly may consider these documents on a motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) ("When ruling on a motion to dismiss, we may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.") (internal quotation marks omitted).

Case No. C 07-4501 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS
(JFEX1)

1    Plaintiff claims that the loan documents failed clearly and conspicuously to disclose the

2  interest rate structure applicable to her loan and the certainty that negative amortization would

3  occur if she made only the minimum payments.  On this basis, Plaintiff alleges that Defendants

4  had a duty to make disclosures that complied with the federal Truth in Lending Act ("TILA") and

5  its implementing regulations, contained in Title 12 of the Code of Federal Regulations

6  ("Regulation Z").  Specifically, she claims that Defendants failed adequately to disclose (1) that

7  negative amortization was certain to occur if Plaintiff followed the Payment Schedule, (2) the

8  interest rate underlying the Payment Schedule as required by 12 C.F.R. § 226.19 , (3) that the

9  initial interest rate on the loan was discounted, and (4) the actual interest rate as required by 12

10 C.F.R. §§ 226.17 & 226.18.  Plaintiff alleges that in failing to make the foregoing disclosures,

11 Defendants committed both common-law fraud and unlawful, unfair, and fraudulent business

12 practices in violation of California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200

13 ("UCL").[5]

14               **II. LEGAL STANDARD FOR DISMISSAL PURSUANT TO RULE 12(b)(6)**

15    "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

16 cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

17 *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

18 dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

19 the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "To

20 survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

21 to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the

22 plaintiff pleads factual content that allows the court to draw the reasonable inference that the

23 defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

24 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Thus, a court need not

25 accept as true conclusory allegations, unreasonable inferences, legal characterizations, or

26

27            [5] Plaintiff does not allege that Defendants are liable under TILA itself, because any such
28 claims were dismissed with prejudice by this Court's order dated September 29, 2009.

Case No. C 07-4501 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS
(JFEX1)

unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## III. DISCUSSION

### A.    Supplemental jurisdiction over state-law claims

Federal courts may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a).  In its previous order, the Court stated that it would retain jurisdiction over Plaintiff's state-law claims if the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2005) ("CAFA") confers federal jurisdiction.  Plaintiff has pled subject matter jurisdiction pursuant to CAFA, stating that there are over 100 members in the proposed class, the amount in controversy exceeds $5,000,000, at least one member of the class is a citizen of a state different from any defendant, and fewer than two-thirds of the class members are citizens of California.  (SAC ¶ 15.)

### B.    Preemption of state-law claims

Plaintiff's fraud and UCL claims both are predicated on Defendants' alleged failure to meet their disclosure obligations under TILA.  Defendants disagree strenuously with the holding of this Court and numerous other district courts that TILA does not necessarily preempt state-law claims predicated on violations of TILA. *See, e.g.*, *Amparan v. Plaza Home Mortgage, Inc.*, No. C 07-4498 JF (RS), 2008 WL 5245497, at *11 (N.D. Cal. Dec. 17, 2008).  Defendants argue that Plaintiff's state-law claims are preempted both because they conflict with TILA's substantive requirements and because they "supplement" TILA by providing a more generous limitations period and additional remedies.  In propounding these arguments, Defendants rely on *Nava v. Virtualbank*, No. 08-069, 2008 WL 2873406 (E.D. Cal. July 16, 2008), in which the district court

5

concluded that TILA-based UCL claims are preempted (1) by 12 C.F.R. § 560.2[6] because that regulation preempts the entire field and (2) by TILA itself because such UCL claims "supplement" impermissibly TILA's remedial scheme.  As explained below, Defendants do not argue that 12 C.F.R. § 560.2 applies in the instant case, and properly pled claims for violations of TILA also may serve as the basis for UCL claims, as such claims are inherently consistent with TILA.  To the extent that *Nava* holds that TILA preempts UCL claims that "supplement" TILA's remedial scheme, this Court respectfully disagrees, as "supplementation" is forbidden only in the context of field-preemptive statutes and not in connection with conflict-preemptive statutes such as TILA.

### 1.    TILA-based state-law claims are consistent with TILA's substantive provisions

Following *Silvas v. E\*Trade Mortg. Corp*., 514 F.3d 1001, 1006 (9th Cir. 2008), *Nava* concluded that TILA-based UCL claims are preempted by 12 C.F.R. § 560.2, a regulation issued by the Office of Thrift Supervision ("OTS")  pursuant to the Home Owner's Loan Act ("HOLA").  *Nava*, 2008 WL 2873406, at *7.  In *Silvas*, the Ninth Circuit considered whether certain types of UCL claims premised on alleged TILA violations are preempted by HOLA.  514 F.3d at 1006.   HOLA gives the OTS broad authority to issue regulations governing thrifts, and the OTS has exercised that authority to declare the "entire field of lending regulation for federal savings associations" preempted.  12 C.F.R. § 560.2(a).  The OTS also has provided a list of specific types of state laws that are preempted.  *See* 12 C.F.R. § 560.2(b).  *Silvas* applied the preemption framework contained in the OTS regulations, which calls initially for a determination as to whether the state law in question is among those considered preempted expressly by OTS regulations.  *See Silvas*, 514 F.3d at 1005 (citing OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).  *Silvas* concluded that disclosure-based UCL claims are preempted expressly by 12 C.F.R. § 560.2(b).  *Id*. at 1006.  Here, Defendants argue that Plaintiff's state-law claims are preempted not by OTS regulations but by TILA itself.

---

[6] As discussed below, 12 C.F.R. § 560.2 is a regulation separate from TILA.

TILA's savings clause states expressly that TILA does not preempt any state law unless that law is inconsistent with TILA.  15 U.S.C. § 1610(b).[7]  *Silvas* did not conclude that TILA-based state-law claims are preempted by a conflict with *TILA*'s substantive provisions, and this proposition has been rejected by the majority of district courts that have considered it.  In *Plascencia*, the court concluded that UCL claims premised on TILA violations are not necessarily preempted because "[t]he UCL does not, on its face, relate to the disclosure of information in connection with credit transactions, let alone impose disclosure requirements that are different than TILA's in any way."  *Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1099 (N.D. Cal. 2008) ("*Plascencia II*") (holding that because"[t]he UCL does not mandate additional disclosures that are substantively inconsistent with TILA's, [it] does not bring the UCL within the scope of TILA's preemption provision").  Similarly, in *Quezada v. Loan Center of California, Inc.*, No. CIV. 08-177 WBS KJM, 2008 WL 5100241, at *4 (E.D. Cal. Nov. 26, 2008), the court explained that while "plaintiff's UCL claims are predicated upon TILA violations[,] she does not contend that the UCL required defendants to 'make disclosures' or use 'term[s] or form[s]' that would contradict TILA's requirements."  *See also Black v. Financial Freedom Senior Funding Corp.*, 92 Cal. App. 4th 917, 936 (2001) ("[A]n inconsistency or contradiction with federal law does not exist merely because the state requires disclosures in *addition* to those required by and under TILA." (emphasis in the original)).

## 2.  TILA-based state-law claims may supplement TILA's framework

Defendants' second preemption argument, regarding the "supplementation" of TILA's framework, rests on a misapplication of *Silvas* and conflates field and conflict preemption. Several district courts have recognized that enforcement of TILA through the UCL may well supplement TILA's framework.  *See, e.g.*, *Plascencia II*, 583 F. Supp. 2d at 1099 ("[T]he fact

---

[7] TILA's preemption clause states that "[e]xcept as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State *relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency*."  15 U.S.C. § 1610(a)(1) (emphasis added).  Subsection (e) contains provisions inapplicable in the instant case.

7

1  that the UCL allows a claim to be brought within four years or may provide remedies not

2  available under TILA . . . provides an additional level of protection for consumers."); *In re First*

3  *Alliance Mortgage Co.*, 280 B.R. 246, 250-51 (C.D. Cal.2002) ("Additional penalties . . . provide

4  greater protection to consumers. [The UCL] does not provide inconsistent disclosure

5  requirements."); *Quezada*, 2008 WL 5100241, at *5 (concluding that TILA did not preempt the

6  plaintiff's disclosure-based UCL claims).  *Nava* reasons that "plaintiff's UCL claim based on

7  violation of TILA is also preempted by federal law since its application would supplement TILA

8  by changing TILA's framework," 2008 WL 2873406, at *7 (citing *Silvas*, 514 F.3d at 1007 n.3),

9  but the prohibition on supplementing federal statutory schemes with state law applies only to

10 areas in which Congress has occupied the field, *Silvas*, 514 F.3d at 1007 n.3 ("*When federal law*

11 *preempts a field*, it leaves 'no room for the States to supplement it.'" (emphasis added and

12 citation omitted)).  Unlike the OTS regulations, TILA was not intended to occupy any field.  *See,*

13 *e.g.*, *In re First Alliance Mortg. Co.*, 280 B.R. at 250 ("TILA neither expressly nor impliedly

14 occupies the whole field of regulation."); *Heastie v. Community Bank of Greater Peoria*, 690 F.

15 Supp. 716, 720 (N.D. Ill. 1988) ("Congress did not intend to fully occupy the field regulating

16 such transactions."); *Black ,* 92 Cal. App. 4th at 937 ("TILA preempts only 'inconsistent' state

17 laws, thus implicitly negating occupation of the field.").  Indeed, outside of the shadow cast by

18 HOLA, the Ninth Circuit has held with respect to UCL claims predicated on TILA that the

19 "vitality of [plaintiffs'] claim under the Truth In Lending Act gives vitality as well to their state

20 claim."  *Jones v. E*Trade Mortg. Corp.*, 397 F.3d 810, 813 (9th Cir. 2005).

21       If through her state-law claims Plaintiff ultimately seeks to impose requirements that are

22 inconsistent or contradictory to TILA, the claims indeed will be preempted by TILA.  *See Rubio*

23 *v. Capital One Bank*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (concluding that disclosures

24 that comply with TILA may not serve as the basis for UCL claims).  However, the claims as pled

25 actually are predicated on facts that, if proved, may support the conclusion that Defendants'

26 disclosures did not comply with TILA because they were misleading.  Plaintiff alleges that the

27 loan documentation failed to disclose 1) the certainty of negative amortization if only the

28 minimum payments were made; 2) the interest rate underlying the payment schedule; 3) the

8

1   actual interest rate; and 4) that the initial interest rate was discounted.  These allegations are

2   sufficient at the pleading stage.

3                    **a.    Disclosure of the certainty of negative amortization**

4          Plaintiff alleges that Defendants violated 12 C.F.R. § 226.19(b)(2)(vii) by failing to

5   disclose that negative amortization was certain to occur if she made only the minimum payments

6   shown in the Payment Schedule.  Section 226.19 requires that a lender disclose "[a]ny rules

7   relating to changes in the index, interest rate, payment limitations, negative amortization, and

8   interest rate carryover."  12 C.F.R. § 226.19(b)(2)(vii).  In addition, with respect to variable-rate

9   loans with payment caps, such as Plaintiff's loan, the Commentary states that "[i]f a consumer is

10  given the option to cap monthly payments that may result in negative amortization, the creditor

11  *must* fully disclose the rules relating to the option, including the effects of exercising the option

12  (*such as [the fact that] negative amortization will occur and the principal loan balance will*

13  *increase*)."  12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).

14         The Note executed by Plaintiff states that "[i]f the Minimum Payment is not sufficient to

15  cover the amount of the interest due, then any accrued but unpaid interest will be added to

16  Principal."  (SAC Ex. 1 ¶ 5(A).)  The Note also states that "my Minimum Payment could be less

17  than or greater than the amount of interest owed each month."  (SAC Ex. 1 ¶ 5(C).)  The

18  Adjustable Rate Loan Program Disclosure (the "Disclosure")[8] states that:

19

20         *If* you monthly payment is not sufficient to pay all interest due, any accrued and
           unpaid interest will be added to the loan principal and will accrue interest at the

21         Note rate.  This means the balance on your loan *could* increase.  This feature is
           called Negative Amortization.

22  _____

23      [8] Wells Fargo renews its request for judicial notice of this document, which was
    submitted previously in support of its Motion to Dismiss the Fourth Amended Complaint.

24  (Defendants' RJN Ex. A).  Plaintiff alleges that certain disclosures – which Defendants contend
    were made in the Disclosure – in fact were not made.  Because the SAC alleges the contents of

25  the Disclosure, the Court may consider the actual document in connection with this motion to
    dismiss.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by*

26  *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (holding that
    "documents whose contents are alleged in a complaint and whose authenticity no party questions,

27  but which are not physically attached to the pleading, may be considered in ruling on a Rule
    12(b)(6) motion to dismiss").

28

1  (Defendants' RJN Ex. A (emphasis added).)

2

3              b.      The Payment Schedule

4         The Payment Schedule contained in the Statement specifies the monthly minimum

5  payments for the duration of the loan.  (SAC Ex. 2.)  The Board's comment to 12 C.F.R. §

6  17(c)(1)-10(v) provides examples of acceptable payment schedules, and these schedules

7  expressly require the lender to list payments reflecting the effect of any payment cap.  The

8  minimum payments on Plaintiff's Payment Schedule reflect the payment cap for the first thirty-

9  eight payments.  (SAC Ex. 2.)  After that, the minimum payment increases dramatically.  (*Id*.)

10  Presumably, this is the point at which the principal has reached 115% of its original value and the

11  payment cap is overridden.

12              c.      Disclosure that the initial interest rate was discounted

13         Plaintiff contends that Defendants violated 12 C.F.R. § 226.17(c)(1) by failing to disclose

14  that the initial interest rate offered on Plaintiff's loan was a discounted rate.  (SAC ¶ 44.)  Section

15  226.17(c)(1) requires that "disclosures shall reflect the terms of the legal obligations between the

16  parties."  12 C.F.R. § 226.17(c)(1).  Section 226.19(b)(2)(v) requires a disclosure of "[t]he fact

17  that the interest rate will be discounted, and a statement that the consumer should ask about the

18  amount of the interest rate discount."  A "discounted" rate is one "that is not determined by the

19  index or formula used to make later interest rate adjustments."  12 C.F.R. Pt. 226, Supp. I, ¶

20  19(b)(2)(v)-1.  "If the initial interest rate will be a discount or a premium rate, creditors must

21  alert the consumer to this fact."  *Id*.  Such a disclosure must be "clear[] and conspicuous[]."  12

22  C.F.R. § 226.17(a)(1).

23         The Note states that "[t]he interest rate I will pay *may* change in accordance with Section

24  4 of this Note."  (SAC Ex. 1 ¶ 2 (emphasis added).)  Section 4 of the Note discusses how the

25  interest rate may change.  The Disclosure provides that "[t]his adjustable rate loan *may* have a

26  discount or premium feature, and your initial interest rate may not be based on the index used for

27  later adjustment.  Ask us for the amount of the current discount or premium."  (Defendants' RJN

28  Ex. A (emphasis added).)  Section 226.19(b)(2)(v) requires disclosure of a discounted rate, not

10

disclosure that the rate might be either discounted *or* at a premium.  12 C.F.R. § 226.19(b)(2)(v).
This falls short of a clear and conspicuous disclosure that the initial interest rate in fact was
discounted.

### d.   Disclosure of the actual interest rate

Section 226.19(b) requires lenders to disclose "any rules relating to changes in the index,
interest rate, payment amount, and outstanding loan balance including, for example, an
explanation of interest rate or payment limitations, negative amortization, and interest rate carry-
over."  12 C.F.R. § 226.19(b)(2)(vii).  Section 1638(a)(4) requires lenders to disclose the cost of
a loan to the borrower "as an 'annual percentage rate' using that term."  15 U.S.C. § 1638(a)(4).
Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[]" of the APR.  15
U.S.C. § 1638(a)(8).   TILA defines the term "APR" as the "cost of your credit as a yearly rate."
12 C.F.R. § 226.18(e).  Where, as here, a loan's initial interest rate subsequently is adjusted, the
APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is
charged and, for the remainder of the term, the rate that would have been applied using the index
or formula at the time of consummation."  Commentary, 12 C.F.R. Pt. 226.(17)(C)-6.  The
disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and
conspicuous.  Commentary, 12 C.F.R. Pt. 226.17(a)(1)-1.  In the Statement, the listed APR was
8.406%.  (SAC Ex.  2.)  As required by TILA, the APR was described as "[t]he cost of your
credit as a *yearly rate*." (*Id.* (emphasis added).)

### e.   Plaintiff may be able to show that, taken together, the disclosures were misleading

All of the information provided to Plaintiff must be considered in assessing whether the
disclosures were clear, conspicuous, and complete.  *See, e.g.*, *Handy v. Anchor Mortgage Corp.*,
464 F.3d 760, 764 (7th Cir. 2006); *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 267-68 (3d Cir.
2003); *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1381 (11th Cir. 1984).  Viewed in
isolation, many of the disclosures were accurate.  However, the information must be viewed in
context of how it was disclosed to Plaintiff.  The Ninth Circuit's holding in *Hauk v. JP Morgan
Chase*, 552 F.3d 114, 1121 (9th Cir. 2009) is not to the contrary.  *Hauk* held that a disclosure

11

1    cannot be rendered misleading by the existence of other information that was neither disclosed

2    nor required by TILA to be disclosed.  Here, as discussed above, the information at issue was

3    required by TILA to be disclosed.

4         The core of Plaintiff's argument is that the minimum payment *necessarily* was

5    insufficient to pay the monthly interest on the loan, making negative amortization a certainty if

6    Plaintiff made only the payments described in the Statement.  While the Payment Schedule

7    accurately reflected the minimum payment owed under the payment cap, "[i]f a consumer is

8    given the option to cap monthly payments that may result in negative amortization, the creditor

9    *must* fully disclose the rules relating to the option, including the effects of exercising the option

10   (*such as [the fact that] negative amortization will occur and the principal loan balance will*

11   *increase*)."  12 C.F.R. Pt. 226, Supp. I. ¶ 19(b)(2)(vii)-2 (emphasis added).  Plaintiff's interest

12   rate under the loan is calculated by adding the 3.5% margin to the Index rate.  Thus, Plaintiff's

13   rate never will be lower than 3.5% after the thirty-day interest rate adjustment.  There never was

14   a possibility that *all* of the payments listed on the Payment Schedule would cover all of the

15   interest at the rate required to repay the loan.  Despite this, the concept of negative amortization

16   was described only as a possibility throughout the Note and the Disclosure.

17        The terms were further obscured by the disclosures relating to the interest rates.  As noted

18   above, the Statement provided that the 8.406% APR was the "cost of your credit *at a yearly*

19   *rate*".  (SAC Ex. 2.)  However, the Note itself states: "I will pay interest at a *yearly rate* of

20   1.000%."  (SAC Ex. 1 ¶ 2 (emphasis added).)  Defendants rely on *Smith v. Anderson*, 801 F.2d

21   661, 663-64 (4th Cir. 1986), for the proposition that "confusion" caused by alleged discrepancies

22   between the APR and rates listed in a note does not give rise to a cognizable claim under TILA

23   because "APR" is a term of art with a meaning distinct from that of the term "interest rate."

24        However, this Court recently relied on *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D.

25   612, 618-19 (E.D. Wis. 2007), *reversed on other grounds*, 545 F.3d 570 (7th Cir. 2008) to

26   distinguish *Smith* on facts nearly identical to those present here.  In the instant case, as in

27   *Andrews*, the initial interest rate was a "teaser" rate.  This fact, together with the Payment

28   Schedule (operating under the payment cap), could mislead Plaintiff as to the actual rate of the

12

1   loan.  The cumulative effect of the teaser rate and the payment cap (i.e., certain negative

2   amortization) was not clearly and conspicuously disclosed, despite the Commentary's

3   requirement of clear and conspicuous disclosure.

4         Defendants argue that negative amortization was not "certain to occur" because (1)

5   Plaintiff could make more than the minimum monthly payment, and (2) after five years, the

6   minimum monthly payment becomes a fully amortizing payment.  But Plaintiff does not claim

7   that negative amortization was certain to occur under all conceivable payment options and at all

8   times.  Rather, she alleges that *she* was certain to experience negative amortization at some point

9   during the loan (principally in the first year) if she made the minimum payments listed on the

10  Payment Schedule, which reflected the exercise of the payment cap.  Plaintiff argues that

11  Defendants' disclosures concerning negative amortization, while not literally false,  were

12  *misleading* given that fact.  This Court and numerous other courts have found such a claim to be

13  cognizable.  *See, e.g.*, *Mincey v. World Savings Bank*, FSB, 614 F. Supp. 2d 610, 636-37 (D.S.C.

14  2008); *Plascencia v. Lending 1st Mortgage*, No. C 07-4485 CW, 2008 WL 1902698, at *5-6

15  (N.D. Cal. Apr. 28, 2008); *Pham v. TJ Financial, Inc.*, No. CV 08-275 ABC (JCx), 2008 WL

16  3485589, at *2, (C.D. Cal. August 11, 2008);  *see also Monaco v. Bear Stearns Res. Mortgage*,

17  554 F. Supp. 2d 1034, 1042 n.11 (C.D. Cal. 2008); *Avila v. Stearns Lending, Inc.*, No. CV 08-

18  0419-AG, 2008 WL 1378231, at *2 (C.D. Cal. April 7, 2008).

19  **C.    Fraudulent omission**

20        Under California law, the elements of a common-law claim for fraudulent omission are:

21  (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to

22  disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact

23  with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted

24  differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained

25  damage as a result of the concealment or suppression.  *See Hahn v. Mirda*, 147 Cal. App. 4th

26  740, 748 (2007).  Allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

27  Defendants argue that Plaintiff's claim must be dismissed because it is not pled with

28  particularity, that they did not have a duty to make the alleged disclosures to Plaintiff, and that

13

they cannot be vicariously liable for ComUnity's alleged fraudulent omissions.  Wells Fargo

argues separately that, even if it did have a duty to make disclosures, Plaintiff could not

justifiably have relied upon it to make those disclosures.

### 1.    Pleading with particularity

Fed. R. Civ. P. 9(b) ("Rule 9(b)") requires that allegations of fraud be "stated with

particularity".  A plaintiff must include a description of the "time, place, and specific content of

the false representations as well as the identities of the parties to the misrepresentations." *Swartz*

*v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  However, in the context of a fraudulent

omission claim, a plaintiff cannot plead a specific time or place of a failure to act. *Washington v.*

*Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).  In that instance, a plaintiff may plead

fraud by alternative means. *Id.*

The purpose of Rule 9(b) is to require a plaintiff to be "specific enough to give

defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

that they can defend against the charge and not just deny that they have done anything wrong."

*Swartz*, 476 F.3d at 764 (internal quotation and citation omitted).  "In the context of a fraud suit

involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant

in the alleged fraudulent scheme." *Id.* at 765 (internal marks and quotation omitted).

Plaintiff alleges that "ComUnity, RBS, Wells Fargo and certain Doe Defendants actively

participated in creating, designing, and formulating the Loan Documents and disclosures, and/or

dictated the terms of the Option ARM loans sold to Plaintiff and Class members."  (SAC ¶ 56.)

Plaintiff alleges that these loan documents fraudulently omitted specific material facts.  (SAC ¶¶

78-86.)  While the SAC could be clearer in identifying the specific actions of each Defendant, it

does provide enough information to give Defendants notice of the conduct that is alleged to

constitute the fraud – a collective effort to "create, design, and formulate" the loan documents at

issue.

### 2.    Duties owed to Plaintiff

A claim of fraudulent omission lies only if Defendants had a duty to disclose the omitted

facts to the Plaintiff.  Defendants argue that they had no such duty.  Plaintiff presents several

14

1   theories as to how such a duty was created here.

2               **a.**      **Duties under TILA**

3         Defendants assert that TILA does not impose a duty to disclose upon a subsequent

4   assignee of a loan. TILA defines a "creditor" as the "person to whom the debt arising from the

5   consumer credit transaction is initially payable on the face of the evidence of indebtedness," 15

6   U.S.C. § 1602(f), and it requires only that a creditor disclose certain information, 15 U.S.C. §

7   1631(a).  Although an assignee may be *liable* for the creditor's violations of TILA, 15 U.S.C. §

8   1641(a) and (e), nothing in TILA requires that the assignee make *disclosures*.  Here, ComUnity is

9   the creditor.  RBS Financial merely is an assignee of the loan that originated with ComUnity, and

10  RBS Acceptance only securitized the loan.  Thus, neither RBS entity had a duty under TILA to

11  make disclosures to Plaintiff, nor did Wells Fargo, as trustee, have such a duty.

12              **b.**      **Assignee liability under the original contract**

13        "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the

14  obligations arising from it, so far as the facts are known, or ought to be known, to the person

15  accepting." Cal. Civ. Code § 1589.  Read with the required liberality, the SAC alleges that the

16  RBS entities voluntarily accepted the benefits of the loan by purchasing the loan and collecting

17  revenues from use of the loan in the securitization process.  (SAC ¶ 67.)  Plaintiff also alleges

18  that "Defendants purchased, packaged, securitized and/or sold the subject Option ARM loans

19  with full knowledge of the failures to disclose and material omissions as alleged herein." ( SAC ¶

20  10.)

21        As discussed above, Plaintiff alleges that RBS Financial and RBS Acceptance

22  participated in creating, designing, and formulating the loan documents that ComUnity used.

23  (SAC ¶ 56.)  Plaintiff provides specific details of an alleged agreement in which RBS Financial

24  agreed to purchase from ComUnity loans that conformed to specific requirements.  (SAC ¶

25  59(a).)  A reasonable inference may be drawn from these allegations that RBS Financial played a

26  part in creating the documents that ComUnity used and the RBS entities knew that the loan

27  documents contained material omissions.  If these allegations are true, the RBS entities had a

28  duty under Cal. Civ. Code § 1589 to disclose the information required by TILA.

1   However, Plaintiff's allegations with respect to Wells Fargo's actual knowledge of the

2   omissions are entirely conclusory. Plaintiff does not describe any connection between ComUnity

3   and Wells Fargo that would support an inference that Wells Fargo must have known that

4   ComUnity's loan documents contained material omissions. A court need not accept as true

5   conclusory allegations, unreasonable inferences, or unwarranted deductions of fact contained in

6   the complaint. *Clegg*, 18 F.3d at 754-755. Plaintiff's allegations are based on technical readings

7   of TILA and its implementing regulations. (SAC ¶¶ 33-55.) The Court concludes that the

8   alleged violations were not so obvious that Wells Fargo would have known of them merely by

9   accepting a transfer of the loan.

10                  **c.      Aiding and Abetting**

11   "California has adopted the common law rule that liability may be imposed on one who

12   aids and abets the commission of an intentional tort if the person knows the other's conduct

13   constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so

14   act." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (internal marks and

15   quotations omitted). Aiding and abetting requires "actual knowledge of the primary violation".

16   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003). It also

17   requires "substantial assistance" with the violation. *In re First Alliance Mortg. Co.*, 471 F.3d at

18   993.

19   Plaintiff alleges that the "Defendants purchased, packaged, securitized and/or sold the

20   subject Option ARM loans with full knowledge of the failures to disclose and material omissions

21   as alleged herein." (SAC ¶ 10.) This allegation does reasonably imply that the RBS entities

22   knew that ComUnity was engaging in fraudulent conduct. In particular, Plaintiff alleges that

23   RBS Financial and RBS Acceptance participated in creating, designing, and formulating the loan

24   documents that ComUnity used. (SAC ¶ 56.) Plaintiff also provides the details of an alleged

25   agreement in which RBS Financial agreed to purchase from ComUnity loans which conformed to

26   specific requirements. (SAC ¶ 59(a).)

27   Plaintiff alleges that the RBS entities gave substantial assistance to ComUnity by

28   participating in creating, designing, and formulating the loan documents that ComUnity used.

16

1   (SAC ¶ 56.)  Plaintiff also alleges that the RBS entities gave substantial assistance by providing

2   funding to ComUnity by referring to the purchase agreement between RBS Financial and

3   ComUnity.  (SAC ¶ 59(a).)  In contrast, Plaintiff's allegations of knowledge of wrongdoing with

4   respect to Wells Fargo are entirely conclusory.

5                    **d.        Non-negotiable instruments**

6           Plaintiff argues that the loan is a non-negotiable instrument and that Defendants as

7   assignees thereof are subject to the same duties as the assignor, ComUnity.  Plaintiff's argument

8   is based on Cal. Civ. Code § 1459.  The SAC makes only a conclusory allegation that the loan is

9   a non-negotiable instrument.  A court need not accept such conclusory allegations as true.  *Clegg*,

10  18 F.3d at 754-755.

11          **3.       Vicarious Liability**

12          Plaintiff claims that there was a joint venture between ComUnity, the RBS entities, and

13  Wells Fargo.  A joint venture requires the sharing of profits and losses, *Lasry v. Lederman*, 147

14  Cal. App. 2d 480, 485 (Cal. Ct. App. 1957), but Plaintiff makes no allegation that Defendants

15  shared either profits or loses.

16  **C.    UCL claims**

17          The UCL prohibits any "unlawful, unfair or fraudulent business practices."  *Cel-Tech*

18  *Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Because the

19  statute is written in the disjunctive, it applies separately to business practices that are (1)

20  unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490,

21  1496 (2003).  Plaintiff alleges that Defendants' conduct violated all three prongs. Defendants

22  argue that, to the extent that the UCL claim is based on fraudulent conduct, it fails for the same

23  reasons as Plaintiff's fraudulent omission claim.  However, Plaintiff *has* stated a claim for

24  fraudulent omission, at least with respect to the RBS entities.  Defendants also argue that they

25  cannot be liable under the UCL because they did not participate personally in the conduct at issue

26  and that the claim is pled with insufficient particularity.

27          **1.       Personal participation in the conduct at issue**

28          Defendants argue that they cannot be liable under the UCL because they did not

                                                17

participate personally in the disclosures made to Plaintiff by ComUnity.  "[A]n unfair practices claim under [the UCL] cannot be predicated on vicarious liability. . . . A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate [the UCL]."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007).  Plaintiff contends that Defendants aided and abetted ComUnity's fraudulent conduct.

As discussed above, aiding and abetting requires "actual knowledge of the primary violation".  *Neilson*, 290 F. Supp. 2d at 1119.  It also requires "substantial assistance" with the violation.  *In re First Alliance Mortg. Co.*, 471 F.3d at 993.  Plaintiff pleads adequately that the RBS entities were involved in drafting the loan documents and in providing funding for ComUnity's lending practices.  This is sufficient to support a claim that the RBS entities knew of the alleged violations within the loan documents and provided substantial assistance to ComUnity in its lending practices.  However, Plaintiff has failed to allege either knowledge or substantial assistance with respect to Wells Fargo.

### 2.   Pleading with particularity

#### a.   Unlawful conduct

"By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech*, 20 Cal.4th at 180.  At least with respect to the "unlawful" prong of the UCL, "[a] plaintiff alleging unfair business practices . . . must state with reasonable particularity the facts supporting the statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (Cal. Ct. App. 1993).  The Court declines to read *Khoury* as requiring that a plaintiff list specifically the statutory elements of a violation.  Rather, *Khoury* requires only  that the complaint contain sufficient factual content to support each element of a violation.  Plaintiff contends that the UCL was violated when Defendants violated the Federal Trade Commission Act, specifically 15 U.S.C. § 45(a)(1), and Cal. Civ. Code §§ 1572, 1573, and 1710.

15 U.S.C. § 45(a)(1) provides that "[u]nfair methods of competition in or affecting

18

commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." Under 15 U.S.C. § 45(n), a practice is unfair if 1) it causes substantial injury, 2) the injury is not outweighed by any countervailing benefits to consumers or competition, and 3) the injury is one that consumers themselves could not reasonably have avoided.

The SAC alleges that all three elements are satisfied here. The SAC alleges substantial injury in the loss of equity in the Plaintiff's home. (SAC ¶ 101.) At least at the time the loan was executed, Plaintiff's home was worth approximately $340,000. (SAC Ex. 2.[9]) Plaintiff alleges that the complained-of conduct has no countervailing benefit to consumers or competition. (SAC ¶ 101.) While this allegation is somewhat conclusory, it is difficult to prove a negative. The Court is satisfied that the SAC alleges adequately that the material omissions at issue have no countervailing benefits. Finally, Plaintiff alleges that the injury could not have been avoided because only the Defendants knew or should have known of the failure to disclose the material information. "[C]onsumers cannot have reasonably avoided the injury if they could not have reasonably anticipated the injury, if they did not have the means to avoid the injury, or if their free market decisions were unjustifiably hampered by the conduct of the seller." *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1405 (Cal. Ct. App. 2006). Plaintiff alleges adequately that she could not have avoided the injury because her free market decisions were unjustifiably hampered by the material omissions allegedly contained in ComUnity's loan documents.

Cal. Civ. Code § 1572(3) provides that actual fraud in connection with a contract is "the suppression of that which is true, by one having knowledge or belief of the fact." Cal. Civ. Code § 1572(5) provides that actual fraud in connection with a contract is "any other act fitted to deceive". Plaintiff's allegations of fraudulent omission, discussed above, are sufficient to support this claim.

---

[9] The approximate value of the home is taken from the "Amount Financed" in the Statement. (SAC Ex. 2.)

19

Cal. Civ. Code § 1573 provides that constructive fraud exists "(1) [i]n any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or, (2) [i]n any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud". Plaintiff's allegations of fraudulent omission also are sufficient to support this claim. Again, Plaintiff has pled sufficient factual content to allow the inference that the RBS entities aided and abetted ComUnity's fraudulent omissions in connection with the loan documents.

Finally, Cal. Civ. Code § 1710(3), entitled "What Constitutes Deceit", provides that "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." This section merely provides a definition and cannot support a claim for relief in and of itself.

### b.    Unfair conduct

Defendants RBS Financial and RBS Acceptance also argue that Plaintiff's UCL claims relating to "unfair" conduct are insufficiently pled. What constitutes unfair conduct in consumer actions under the UCL is unclear. *Camacho*, 142 Cal. App. 4th at 1400. However, *Camacho* concluded that "unfairness" under the UCL should be judged by the same standard used by the Federal Trade Commission in 15 U.S.C. § 45(n). *Id.* at 1403. *See also Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 584 (Cal. App. 2d Dist. 2009) (applying the unfairness test from *Camacho*). The mechanics of this test and Plaintiff's factual allegations are described above. Plaintiff has sufficiently pled unfairness with respect to the RBS entities.

### c.    Fraudulent conduct

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive". *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009). Even under the heightened pleading standard of Fed. R. Civ. R. 9(c), Plaintiff has pled this claim sufficiently. The claim is based on specific omissions of material fact in the loan documents used by ComUnity. Plaintiff has sufficiently identified those omissions. (SAC ¶¶ 78-86.) Plaintiff also has provided sufficient detail to put Defendants on notice of the conduct that

constitutes the claim of fraud.  The SAC has sufficient particularity to permit a inference that RBS Financial and RBS Acceptance were involved in the creation, design, or formulation of the loan documents.

### IV. Conclusion

For the reasons discussed above, the motion to dismiss will be denied with respect to RBS Financial and RBS Acceptance and granted with respect to Wells Fargo.  In light of Plaintiff's numerous previous opportunities to plead her claims, leave to amend as to Wells Fargo will be denied.  The RBS entities shall file their answer within thirty (30) days of the date this order is filed.

**IT IS SO ORDERED.**

DATED: 7/6/10

_____
JEREMY FOGEL
United States District Judge

Case No. C 07-4501 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS
(JFEX1)